UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| EVINE BATTLE,<br><br>  　　　　　Petitioner,<br>v.<br><br>BRIAN WILLIAMS, et al.,<br><br>  　　　　　Respondents. | Case No. 2:19-cv-00453-GMN-DJA<br><br>ORDER |

Before the court for a decision on the merits is a petition for a writ of habeas corpus filed by Evine Battle. ECF No. 7. For reasons that follow, the petition will be denied.

I.　　BACKGROUND[1]

In May 2015, a jury sitting in the Eighth Judicial District Court for Clark County, Nevada, found Battle guilty of burglary while in possession of a deadly weapon, first degree kidnapping with use of a deadly weapon, robbery with use of a deadly weapon, and carrying concealed firearm or other deadly weapon.[2] The Nevada Supreme Court recounted the facts of his case as follows:

> A GameStop store was robbed and an employee, Michelle Tyler, was restrained in the store's bathroom. Immediately after the incident, Tyler told police she would be unable to identify the culprit. Three days

---

[1] This background is derived from exhibits filed at ECF Nos. 13-17 and from this court's own docket.
[2] The jury acquitted Battle on two counts related to an alleged robbery of a 7-Eleven.

later, appellant Evine Battle was apprehended at a Jack in the Box restaurant after acting suspiciously. Battle was dressed similarly to the individual in the GameStop incident, and police found a concealed firearm in his sweatshirt. Four days after the GameStop incident, Tyler was shown a photo lineup and identified Battle as the culprit, although Tyler noted that she was not 100 percent sure about the identification.

ECF No. 16-6 at 2.

The state district court sentenced Battle to an aggregate term of 360 months in prison with the possibility of parole after 120 months. A judgment of conviction was entered in August 2015.

Battle appealed his judgment of conviction arguing that insufficient evidence was presented at trial to convict him on the three charges related to the GameStop incident and that his venire was not composed of a fair cross-section of Clark County because African Americans were underrepresented. The Nevada Supreme Court rejected those arguments and affirmed Battle's convictions.

In August 2017, Battle filed a pro se petition for writ of habeas corpus with the state district court. In his state petition, he raised claims of ineffective assistance of trial counsel and appellate counsel. The state district court denied relief. On appeal, Battle raised additional claims of ineffective assistance of counsel. The Nevada Court of Appeals affirmed the state district court's order denying habeas relief in January 2019.

Battle initiated this proceeding on March 12, 2019. Respondents filed an answer to the petition, in response to which Battle filed a reply. The court now addresses petitioner's four grounds for relief on the merits.

II.     STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA).  28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

      (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

      (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court

3

rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), overruled on other grounds by *Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014).; *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

Because de novo review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in de novo review rather than applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

III.   DISCUSSION

*Ground One* – In Ground One, Battle alleges that his convictions in relation to the GameStop incident are in violation of his constitutional rights because insufficient evidence was presented at trial to convict him beyond reasonable doubt. In support of this claim, he contends that the only evidence supporting the convictions is the testimony of Michelle Tyler, which was unreliable. Battle points to the fact that Tyler initially told the police that she would not be able to identify the robber and that she only saw his mouth and nose. He also notes that, while she identified him from a photo lineup, she also indicated she was not sure he was the culprit.

Battle presented his sufficiency of evidence claim to the Nevada Supreme Court in his direct appeal. The court addressed the claim as follows:

> Battle argues that there was insufficient identification evidence to convict him on the three counts associated with the incident at the

GameStop because Tyler initially said she could not identify the culprit. We disagree.

There is sufficient evidence for a conviction, when, "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *McNair v. State,* 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). "Where there is substantial evidence to support the jury's verdict, it will not be disturbed on appeal." *Kazalyn v. State,* 108 Nev. 67, 71, 825 P.2d 578, 581 (1992).

We recognize that there are some indications that Tyler's identification of Battle was unreliable. *See White v. State,* 112 Nev. 1261, 1265, 926 P.2d 291, 294 (1996) (Rose, J., dissenting) (recognizing that identification reliability issues may arise under stressful circumstances, when cross-race identifications occur, and when time passes between an event and an identification); *see also Neil v. Biggers,* 409 U.S. 188, 199–200 (1972) (noting that identifications may be inaccurate when the eyewitness does not have a good opportunity to "view the criminal at the time of the crime," and an eyewitness is uncertain about identification soon after an event). Tyler was subject to a stressful event, only saw the culprit's nose, mouth, and facial hair, gave conflicting testimony regarding the facial hair, and stated that she could not identify the culprit immediately after the event. Furthermore, cross-racial identification concerns are implicated here, and, when Tyler identified Battle in the photo lineup a few days after the robbery, she could not identify him with 100 percent certainty.

However, the jury was specifically instructed on many of these identification issues. *See McConnell v. State,* 120 Nev. 1043, 1062, 102 P.3d 606, 619 (2004) ("We presume that juries follow the instructions they are given...."). In closing arguments, Battle stressed the importance of the jury instruction, explaining why Tyler may have misidentified Battle. Despite these issues, the jury appears to have found Tyler credible. *See McNair,* 108 Nev. at 56, 825 P.2d at 573 ("[I]t is the jury's function ... to assess the weight of the evidence and determine the credibility of witnesses."). Furthermore, the jury was shown surveillance videos and pictures of the culprit from the GameStop incident. In closing arguments, the State "implore[d the jury] to look at the similarities in the facial features" between a picture of the culprit at GameStop and Battle. The State noted that the nose, lips, chin and facial fair looked the same.

Additionally, circumstantial evidence was presented that implicates Battle in the crime. The GameStop robbery occurred within five days of the incidents at Jack in the Box and 7–Eleven. The clothing that Battle was wearing when he was arrested at Jack in the Box was similar to what the culprit at GameStop wore, and the gun found on Battle was similar to the weapon wielded at GameStop.

Thus, we choose not to reweigh the jury's credibility determination, and, beyond Tyler's identification, there was direct and circumstantial evidence that Battle was the culprit of the GameStop crime. For these reasons, we conclude that *"any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *McNair,* 108 Nev. at 56, 825 P.2d at 573 (internal quotation marks omitted).

ECF No. 16-6 at 3-5 (footnote omitted).

The Nevada Supreme Court correctly identified the "rational factfinder" standard established in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), as the federal law standard to test whether sufficient evidence supports a state conviction. *See Mikes v. Borg*, 947 F.2d 353, 356 (9th Cir. 1991). Under that standard, the court inquires as to "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citation omitted). And because this court must review the Nevada Supreme Court's sufficiency of evidence determination under AEDPA, "there is a double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011). That means that even if this court "think[s] the state court made a mistake," the petitioner is not entitled to habeas relief unless the state court's application of the *Jackson* standard was "'objectively unreasonable.'" *Id*.

There is no reasonable dispute that the State presented sufficient evidence at trial to establish all the elements of the crimes arising from the GameStop incident. The only question is one of identification. Beyond evidence discussed by the Nevada Supreme Court, additional evidence supports the jury's finding that Battle was the culprit. The jury was able to compare video and still shots of Battle taken from surveillance cameras at the GameStop with those from a body camera worn by the officer who arrested him at the Jack in the Box three days later. ECF No. 14-2 at 144-51; ECF No. 14-4 at 53-55. The record before this court suggests that this photographic evidence was sufficiently clear to discern details of Battle's facial features. ECF No. 15-4 at 47. In addition, Battle was apparently wearing "oversized sunglasses" on both occasions. *Id*. The evidence presented a trial is sufficient for this court to conclude that the Nevada Supreme Court's decision to deny relief was not "objectively unreasonable" under the *Jackson* standard.

1    Ground One is denied.

2    *Ground Two* – In Ground Two, Battle alleges his convictions are in violation of his constitutional rights because the trial court committed structural error by refusing to have a hearing to determine the racial composition of the jury panel and how the jury commissioner chose the panel. He alleges that African Americans were underrepresented on the panel in his case. He further alleges that the trial court erred by relying on a hearing in another case.

Battle presented this claim to the Nevada Supreme Court in his direct appeal. The court addressed the claim as follows:

> Battle argues that his venire was not composed of a fair crosssection of Clark County because African Americans were underrepresented. Further, he contends that the district court erred by not conducting a hearing to determine whether there were 2 or 4 African Americans on the 60–person venire. We disagree.
>
> "[I]t is settled that a grand jury must be drawn from a cross-section of the community, and there must be no systematic and purposeful exclusion of an identifiable class of persons." *Adler v. State,* 95 Nev. 339, 347, 594 P.2d 725, 731 (1979). "[A] prima facie violation of the fair-cross-section requirements" is demonstrated by showing
>
>> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.
>
> *Williams v. State,* 121 Nev. 934, 940, 125 P.3d 627, 631 (2005) (internal quotation marks and emphasis omitted).
>
> Regardless of whether distinctive groups were underrepresented on the jury, Battle must also demonstrate a systematic exclusion. *Id.* "[A]s long as the jury selection process is designed to select jurors from a fair cross section of the community, then random variations that produce venires without a specific class of persons or with an abundance of that class are permissible." *Id.*
>
> The district court provided the parties with a transcript from a hearing in a different case, where the jury commissioner testified about the jury selection process used in Clark County. We conclude that the process explained by the jury commissioner provides no opportunity for systematic exclusion of specific races.[2] Accordingly, because Battle failed to provide

7

any competing evidence in the record, he has failed to make a prima facie showing under the third prong of *Williams.*

Furthermore, Battle was not entitled to a hearing as to whether there were two or four African Americans on the venire pursuant to *Afzali v. State,* 130 Nev., Adv. Op. 34, 326 P.3d 1 (2014). Battle was allowed to and did challenge the composition of the venire. Unlike *Afzali,* where the composition of a grand jury venire was a secret, this petit venire appeared before the district court and Battle. Therefore, information about the racial composition of the venire was readily available to all the parties in the courtroom. Additionally, after looking at the venire, the district court determined on the record that there were four African Americans. This situation is unlike *Afzali,* because Battle was not "without access to information about the racial composition of the [venire] that [convicted] him." *Id.* at 3. Thus, we conclude that Battle's fair cross-section argument is without merit.

_____

[2] Battle also incorrectly argues that pursuant to *Williams v State*, 121 Nev. 934, 942 n.18, 125 P. 3d 627, 632 n.18 (2005), a jury pool must be drawn from at least three sources. In *Williams*, this court referenced a report prepared by the Nevada Jury Improvement Commission in which it "recommended that at least three source lists be used to constitute jury pools." *Id*. This court has never created a brightline rule requiring that a jury pool be drawn from three sources.

ECF No. 16-6 at 5-7.

The three-part test applied by the Nevada Supreme Court was taken from *Duren v. Missouri*, 439 U.S. 357 (1979), and constitutes the correct federal law standard to address Battle's federal law claim. *See Duren*, 439 U.S. at 364. While the Nevada Supreme Court focused on the third prong of the *Duren* test, Battle failed to satisfy the second prong as well. There are several tests for measuring the degree of underrepresentation and no particular method is constitutionally mandated, *see Berghuis v. Smith*, 559 U.S. 314, 329–30 (2010), but Battle provided information only about his particular venire. That is insufficient. *See Thomas v. Borg*, 159 F.3d 1147, 1150 (9th Cir. 1998) (holding that petitioner's observations that there were no black jurors on the panel from which his jury was chosen did not satisfy second *Duren* prong, because his panel represented only a small portion of venires); *United States v. Miller*, 771 F.2d 1219, 1228 (9th Cir.1985) ("[A] violation of the fair cross-section requirement cannot be premised upon proof of underrepresentation in a single jury.").

With respect to the third prong, Battle is required to show that the underrepresentation of African Americans was "*inherent* in the particular jury-selection process." *Randolph v. People of the State of Cal.*, 380 F.3d 1133, 1142 (9th Cir. 2004) (quoting *Duren*, 439 U.S. at 366 (emphasis added by *Randolph* court)). The Nevada Supreme Court correctly concluded that merely citing to the Nevada Jury Improvement Commission's recommendation was not adequate to meet the requirement. In addition, there is no federal law requirement that the trial court hold a hearing where the defendant has failed to make a *prima facie* case under *Duren*. *See Miller*, 771 F.2d at 1228-29.

Therefore, Battle is not entitled to relief on this claim because the state court's adjudication of the claim was based on a reasonable determination of the facts and was not contrary to, or an unreasonable application of, clearly established federal law. Ground Two is denied.

*Ground Three* – In Ground Three, Battle alleges that he was deprived of his constitutional right to effective assistance of counsel at trial. Battle presented his ineffective assistance of counsel (IAC) claims to the Nevada Court of Appeals in his state post-conviction proceeding. The court correctly identified the federal law standard governing IAC claims:

> To prove ineffective assistance of counsel, a petitioner must demonstrate counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice such that there is a reasonable probability, but for counsel's errors, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). Both components of the inquiry must be shown. *Strickland*, 466 U.S. at 697.

ECF No. 17-10 at 2.

Battle claims ineffective assistance due to counsel's alleged failure to move to suppress or object to evidence obtained by Officer Corales, the officer who arrested him at the Jack in the Box after finding a concealed pistol in Battle's waistband. Battle

contends that Corales lacked a reasonable suspicion to justify his initial stop and lacked probable cause for the subsequent search and arrest. Based on that, he argues that counsel had grounds to move to suppress Corales's testimony about the pat-down search, the items seized by Corales, and the video captured by Corales's body camera.

The Nevada Court of appeals addressed this IAC claim as follows:

> Battle argued his counsel was ineffective for failing to file a motion to suppress evidence obtained as a result of a pat-down search. Battle asserted the police officer did not have a reasonable suspicion to justify the pat-down search. Battle failed to demonstrate his counsel's performance was deficient or resulting prejudice. During the trial, counsel explained to the trial court that she had not been able to file a motion to suppress evidence because she had only viewed the pertinent video recording depicting the pat-down search shortly before trial. Counsel explained the investigation into the facts of this case was limited as Battle had invoked his speedy trial rights, and as a result, she had not been able to pursue a motion to suppress evidence ahead of trial. Counsel therefore requested the district court to instruct the jury concerning the constitutionality of the pat-down search. The district court recognized the limitations imposed upon the defense given Battle's decision to invoke his speedy trial rights, but declined to utilize counsel's proposed instruction. Given the record in this matter and Battle's request for a speedy trial, we conclude Battle did not demonstrate counsel's performance fell below an objectively reasonable standard.
>
> In addition, the facts in the record demonstrated the totality of the circumstances justified the pat-down search. *See Cortes v. State*, 127 Nev. 505, 511, 260 P.3d 184, 189 (2011). The evidence produced at trial demonstrated a person had frightened workers at a Jack in the Box restaurant and a worker called the police. When an officer arrived in the restaurant, he observed that Battle was wearing a hooded sweatshirt with the hood covering his head, dark sunglasses at night, and gloves. The officer attempted to talk with Battle, but Battle walked away from the officer and out of the restaurant at a brisk pace. The officer followed Battle and ordered Battle to stop and to raise his hands. Battle initially raised his hands, but soon lowered them and reached towards his pocket. The officer again commanded Battle to raise his hands and Battle complied. The officer testified that for safety reasons, he placed Battle in handcuffs and conducted a pat-down of Battle. The officer testified he discovered a pistol in Battle's front pocket. Battle's dress, his refusal to talk with the officer in the restaurant, and his reach towards a pocket despite the command to raise his hands demonstrated a reasonable officer confronted with this situation could reasonably suspect that Battle was armed and that a pat-down was necessary for safety reasons. *See id*. Accordingly, Battle failed to demonstrate a reasonable probability of a different outcome had counsel moved to suppress the evidence obtained following the pat-down search. Therefore, we conclude the district court did not err by denying this claim.

ECF No. 17-10 at 2-4.

Reviewed under § 2254(d), the state court's adjudication of the claim did not "result[] in a decision that was contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor did it "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Battle contends a motion to suppress would have been successful because his initial detention was not justified under *Terry v. Ohio*, 392 U.S. 1 (1968). Under *Terry*, an investigative stop is only permissible where "the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry*, 392 U.S. at 30). Although reasonable suspicion does not demand as strong a showing as probable cause and requires less than a preponderance of the evidence, it nonetheless requires at least a minimal level of objective justification for making an investigatory stop. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *see also United States v. Cortez*, 449 U.S. 411, 417 (1981) ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."). "The standard takes into account the totality of the circumstances—the whole picture." *Prado Navarette v. California*, 572 U.S. 393, 397 (2014). Thus, facts that alone may seem innocent can create a reasonable suspicion of criminality when viewed in a larger context. *See, e.g., United States v. Franco–Munoz*, 952 F.2d 1055, 1057 (9th Cir.1991) ("[T]he facts used to establish 'reasonable suspicion' need not be inconsistent with innocence.").

The facts found by the Nevada Court of Appeals are supported in the record by Corales's testimony and the testimony of Daniel Peralta, the supervisor on duty at the Jack in the Box. ECF No. 14-4 at 8-22, 43-66. An additional fact not mentioned in the state court's decision was that Corales had been advised that Battle had been in the

Jack in the Box for "several hours" dressed as described in the decision. *Id.* at 44.[3] Although viewed individually the factors relied upon by Corales might appear innocent, taken together, the circumstances supported a reasonable suspicion that criminal activity was afoot. The state court's determination that the investigative stop was warranted was not unreasonable.

Even so, "[a] lawful frisk does not always flow from a justified stop." *United States v. Thomas*, 863 F.2d 622, 628 (9th Cir. 1988). Rather, "[e]ach element, the stop and the frisk, must be analyzed separately; the reasonableness of each must be independently determined." *Id.*; *see also Terry*, 392 U.S. at 22–23. The standard for justifying a frisk is whether a reasonably prudent person in the circumstances would be warranted in the belief that his or her safety or that of others was in danger. *Id.*, *see also Terry*, 392 U.S. at 27. The Nevada Court of Appeals reasonably applied federal law on this issue as well. Battle's refusal to talk with Corales and his reach towards a pocket after first complying with Corales's command to raise his hands were sufficient grounds for Corales to conduct the pat-down search. *See United States v. Burkett*, 612 F.3d 1103, 1107 (9th Cir. 2010) (frisk justified based on "evasive and deceptive responses" to an officer's questions and unnatural hand postures that suggest an effort to conceal a firearm).

Though not specifically addressed by the Nevada Court of Appeals, Corales also had probable cause to arrest Battle. Corales testified at trial that, upon finding the gun concealed in Battle's waistband, he conducted a records check and determined that Battle did not have a permit to carry a concealed weapon. ECF No. 14-4 at 53. At that point Corales was permitted to seize as evidence all the items in Battle's possession. *See United States v. Robinson*, 414 U.S. 218, 230-34 (1973). As for counsel's alleged failure to seek suppression of the body camera video, Battle fails to identify the grounds

---

[3] In addition, Peralta testified that Battle did not place an order during the entire time he was in the restaurant. *Id*. at 14. It is not clear, however, that that fact was communicated to Corales.

upon which counsel could have successfully argued for its exclusion. Given that the recording took place in public location where Battle had no reasonable expectation of privacy, his rights under the Fourth Amendment were not implicated. *See United States v. Jones*, 565 U.S. 400, 411 (2012).

Because he has not established a reasonable probability that counsel could have successfully excluded the evidence obtained by Officer Corales, the court denies relief on his claim that counsel was ineffective in that regard.

Battle also alleges in Ground Three that counsel was ineffective by not moving to suppress allegedly involuntary statements he made without the benefit of *Miranda*[4] warnings. The Nevada Court of Appeals addressed this IAC claim as follows:

> Battle claimed his trial counsel was ineffective for failing to move to suppress his statements due to a violation of his *Miranda* rights. Battle failed to demonstrate his counsel's performance was deficient or resulting prejudice. Battle appeared to assert counsel should have sought suppression of his statement to the officer following the discovery of the firearm where he stated it was legal for him to carry a concealed weapon. The record demonstrated Battle made that statement directly after the officer discovered the firearm and did not make the statement under questioning by the officer. Considering the circumstances in which Battle made the challenged statement, he failed to demonstrate he was subjected to a custodial interrogation, and therefore, his statements were properly admitted at trial. *See Rosky v. State*, 121 Nev. 184, 191-92, 111 P.3d 690, 695-96 (2005). Accordingly, Battle failed to demonstrate reasonable counsel would have moved to suppress this statement or a reasonable probability of a different outcome had counsel done so. Therefore, we conclude the district court did not err by denying this claim.

ECF No. 17-10 at 4 (footnotes omitted).

This decision is also entitled to deference under § 2254(d). Moreover, Battle cannot show *Strickland* prejudice because his statements were unnecessary to establish his guilt. The State presented sufficient evidence to establish beyond a reasonable doubt that Battle was guilty of carrying a concealed firearm without Battle's

---

[4] *Miranda v. Arizona,* 384 U.S. 436 (1966).

13

statements. Thus, he cannot show a reasonable probability of a different outcome even if the statements had been suppressed.

Ground Three is denied.

*Ground Four* – In Ground Four, Battle alleges he was deprived of his constitutional right to effective assistance of counsel on direct appeal because counsel failed to challenge the first degree kidnapping conviction by arguing that movement of the victim was incidental to the robbery and did not substantially increase the risk of harm to the victim. To sustain convictions for both robbery and kidnapping arising from the same course of conduct, under Nevada law, any movement or restraint must either "stand alone with independent significance from the act of robbery itself, create a risk of danger to the victim substantially exceeding that necessarily present in the crime of robbery, or involve movement, seizure or restraint substantially in excess of that necessary to its completion." *Mendoza v. State*, 130 P.3d 176, 181 (Nev. 2006)

The Nevada Court of appeals addressed this IAC claim as follows:

> Battle argued his appellate counsel was ineffective. To prove ineffective assistance of appellate counsel, a petitioner must demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice such that the omitted issue would have had a reasonable probability of success on appeal. *Kirksey v. State*, 112 Nev. 980, 998, 923 P.2d 1102, 1114 (1996). Both components of the inquiry must be shown, *Strickland*, 466 U.S. at 697. Appellate counsel is not required to raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Rather, appellate counsel will be most effective when every conceivable issue is not raised on appeal. *Ford v. State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989).
>
> Battle claimed his appellate counsel was ineffective for failing to argue the kidnapping conviction should be dismissed because it was incidental to the robbery. Battle failed to demonstrate his counsel's performance was deficient or resulting prejudice. The record reveals that Battle filed letters written by his appellate counsel in which counsel acknowledged Battle wished for him to raise a challenge to the kidnapping conviction on appeal, but counsel informed Battle he believed that issue did not have merit and he would not pursue meritless claims on appeal. Tactical decisions such as this "are virtually unchallengeable absent extraordinary circumstances," *Ford*, 105 Nev. at 853, 784 P.2d at 953, which Battle did not demonstrate.

> In addition, Battle did not demonstrate a reasonable probability of a different outcome had counsel argued the kidnapping charge was incidental to the robbery on direct appeal. The evidence produced at trial demonstrated Battle robbed a game store employee at gunpoint. After obtaining the store's money, Battle ordered the employee to the back of the store, zip-tied her hands to a bathroom stall, and left her alone in the store bathroom. The movement to a secluded portion of the store and the restraint of the victim were not necessary to complete the robbery and substantially increased risk of danger to the victim. *See Mendoza v. State*, 122 Nev. 267, 275, 130 P.3d 176, 181 (2006). Therefore, we conclude the district court did not err by denying this claim.

ECF No. 17-10 at 5-6.

The state court correctly identified the federal law standard governing appellate IAC claims. *See Smith v. Murray*, 477 U.S. 527, 535–536 (1986) (applying *Strickland* to claim of attorney error on appeal). In addition, the court's determination of the facts was reasonable in light of evidence presented at Battle's trial (see testimony of Michelle Tyler and Eric Trevizo, ECF No. 14-2 at 130-199), as was its conclusion that the facts established a kidnapping independent of the robbery under Nevada law. Thus, the state court reasonably determined that counsel's failure to challenge the kidnapping conviction did not amount to ineffective assistance of counsel.

Having concluded the state court adjudication of the claim is entitled to deference under § 2254(d), the court denies Ground Four.

IV.   CONCLUSION

For the reasons set forth above, Battle's petition for habeas relief will be denied.

*Certificate of Appealability*

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated its adjudication of this case to determine whether to issue a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to

claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating petitioner's petition, the court declines to issue a certificate of appealability for its resolution of any procedural issues or any of petitioner's habeas claims.

**IT IS THEREFORE ORDERED** that that petitioner's petition for writ of habeas corpus (ECF No. 7) is DENIED. The Clerk shall enter judgment accordingly and administratively close this case.

**IT IS FURTHER ORDERED** that a certificate of appealability is denied.

DATED THIS  21  day of   May  , 2020.

_____
UNITED STATES DISTRICT JUDGE